IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEVEN S. KEAL,                         )
                                        )
                    Plaintiff,          )
                                        )
vs.                                     )        Case No. 06-1312-MLB
                                        )
MICHAEL J. ASTRUE,[1]                   )
Commissioner of                         )
Social Security,                        )
                                        )
                    Defendant.          )
_____ )


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties and has been
referred to this court for a recommendation and report.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner

_____

     [1]On February 12, 2007, Michael J. Astrue was sworn in as the
Commissioner of Social Security.  In accordance with Rule
25(d)(1) of the Federal Rules of Civil Procedure, Michael J.
Astrue is substituted for Commissioner Jo Anne B. Barnhart as the
defendant.  In accordance with the last sentence of 42 U.S.C. §
405(g), no further action is necessary.

as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be

2

determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does

not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

## II.  History of case

On April 7, 2006, administrative law judge (ALJ) Guy E.

Taylor issued his decision (R. at 27-33).  Although the ALJ
stated that the ALJ filed a claim alleging disability since
November 15, 2001 (R. at 27), plaintiff indicated in his
application for disability benefits that he has been disabled
since January 15, 2001 (R. at 469), and plaintiff indicated in
his application for supplemental security income that he has been
disabled since March 2, 2001 (R. at 803).  At the hearing, the
ALJ asked plaintiff and plaintiff's counsel why plaintiff put on
his application that he became disabled as of January 15, 2001
(R. at 830-832).  The ALJ stated in his decision that plaintiff's
counsel, at the hearing, "requested an amended onset date of
September 1, 2003," which was granted (R. at 27).  Plaintiff
argues in his brief that his counsel and the ALJ discussed an
amended onset date at the hearing, but that no agreement was
reached.  A review of the transcript confirms that plaintiff's
counsel discussed an amended onset date with the ALJ, but it is
not clear from the record that plaintiff's counsel ever agreed to
an amended onset date of September 1, 2003 (R. at 830-834).
Defendant did not discuss this issue in his brief.  Because this
case is being remanded for further hearing, the issue of the
onset date of disability being alleged by the plaintiff shall be
addressed by plaintiff's counsel and the ALJ.

     At step one, the ALJ found that plaintiff had not engaged in
substantial gainful activity since September 1, 2003 (R. at 28).

At step two, the ALJ found that plaintiff had the following severe impairments: organic mental disorder and a history of substance abuse, including current abuse of alcohol (R. at 29). The ALJ also determined that plaintiff's seizures had been resolved and were not a severe impairment (R. at 30). At step three, the ALJ found that plaintiff's impairments did not meet or equal a listed impairment (R. at 30).

The RFC established by plaintiff included various physical limitations, a limitation to "simple repetitive unskilled tasks" and a limitation in his ability to "interact with the public and co-workers" (R. at 31). Plaintiff does not dispute any of the physical limitations found by the ALJ, arguing that plaintiff is disabled solely from limitations attributable to his mental impairments (Doc. 9 at 3-4). At step four, the ALJ, relying on vocational expert testimony, found that plaintiff could perform past relevant work as a flagman, dishwasher, and an office cleaner, and is therefore not disabled (R. at 32).

### III. Did the ALJ err in his analysis of the medical opinions?

The opinions of physicians who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency

physician who has never seen the claimant is entitled to the least weight of all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

    After considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the

opinion.  If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so.  <u>Watkins</u>, 350 F.3d at 1301.

An ALJ must evaluate every medical opinion in the record, although the weight given to each opinion will vary according to the relationship between the disability claimant and the medical professional.  <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1215 (10th Cir. 2004).  In the determination of issues reserved to the Commissioner, such as opinions regarding: whether an impairment meets or equals a listing, plaintiff's RFC, whether a plaintiff can do past relevant work, how age, education, and work experience apply, and whether a plaintiff is disabled, treating source opinions are not entitled to special significance or controlling weight.  <u>Soc. Sec. Rul.</u> 96-5p, (Medical Source Opinions on Issues Reserved to the Commissioner), 1996 WL 374183, at *2.  However, even on issues reserved to the Commissioner, including the RFC determination and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored.  Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3.  It is clear legal error to ignore a medical opinion.  <u>Victory v. Barnhart</u>, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005).  It is reversible error for the ALJ not to discuss uncontroverted evidence he chooses not to rely on, as well as significantly probative evidence he rejects.

8

Grogan v. Barnhart, 399 F.3d 1257, 1266 (10th Cir. 2005).

In this case, the ALJ rejected the opinions of numerous treating and examining physicians, psychologists and psychiatrists that plaintiff is disabled.  Those opinions will be set forth below.

On March 2, 2003, Dr. Daniel Pauls wrote a letter regarding plaintiff. Dr. Pauls indicated that he had been caring for plaintiff intermittently since 1979.  He stated the following:

> I am not intimately acquainted with Mr. Keal's work history over the years, but I do know that **he has not been able to obtain any type of steady employment. Due to Mr. Keal's previous head injury, he has difficulty in relating to people, and has difficulty in maintaining any type of initiative. His behavior has been erratic, and at times even destructive. He has been hospitalized multiple times for psychiatric problems.**[2] This is complicated by intermittent problems he has with alcohol and drug use and abuse.
>
> **Given these factors, Mr. Keel is significantly disabled**, primarily by virtue of his psychiatric problems, although these may well all stem from his physical head injury that occurred as a child. If you have further questions, please do not hesitate to let me know.

(R. at 381, emphasis added).

On September 16, 2003, Dr. Terrie Price, a licensed

---

[2]In a psychological consultative examination by Dr. Mintz on June 1, 2001, Dr. Mintz concluded that plaintiff had poor social skills and **"functioned marginally in work settings generally doing some part time work"** (R. at 743, emphasis added).

psychologist, prepared a neuropsychology consultation report (R. at 585-603).  This report was based on the following: (1) an interview with the patient, (2) a review of records provided by the family, including two prior psychological evaluations, (3) Wechsler memory Scale-III Test, (4) California Auditory Verbal Learning Test, (5) Beck Depression Inventory-2, (6) Wide Range Achievement Test-3, (7) Wechsler Adult Intelligence Scale-III test, (8) Grooved Pegboard Test, (9) Paced Auditory Serial Addition Test, (10) Trail Making Tests A & B, (11) Hooper Visual Organization Test, (12) 21-Item Test, (13) Rey-Osterreith Complex Figure Test, (14) Wisconsin Card Sorting Test, and (15) Controlled Word Association Test (R. at 590).  Dr. Price diagnosed plaintiff with personality change secondary to head injury, combined type (paranoid and disinhibited); alcohol abuse-intermittent; and past poly substance abuse (R. at 593).  Dr. Price's conclusions were as follows:

> **Mr. Keal has been unable to sustain employment for prolonged periods of time without close supervision in something like a structured supported employment setting.** Behavior issues are such that he requires continued support of others.  He has not been able to support himself or sustain himself independently.  Rather, he has required a significant amount of assistance from his family through the years. **He is not likely to be employable at a competitive level.** He has not been able to manage his finances to the point of going into bankruptcy for abuse of credit cards. He has not been compliant with medications including antihypertensives. He

> also continues to abuse alcohol periodically
> and has gained substantial weight over time.
> He does not comply with seizure medication
> when on it. Given poor judgment and impulse
> control it would not be recommended that he
> manage his own funds were he to acquire
> social security disability.

(R. at 592-593, emphasis added).

On April 20, 2004, Dr. Raul Huet, a treating physician, diagnosed plaintiff with personality change due to traumatic brain injury (apathetic and paranoid type); dysthymic disorder; history of alcohol abuse-remission; history of major depressive disorder, single, full remission; rule out personality disorder NOS.  Dr. Huet then stated the following:

> **I believe Mr. Keal is disabled and due to the
> nature of his disorder, i.e., due to
> traumatic brain injury years ago, he may well
> be disabled permanently.**

(R. at 637, emphasis added).

On June 15, 2004, Dr. Marvin Parrish, a treating psychologist, stated that plaintiff is emotionally immature as an adult, and that "**His status in this regard-both historically and presently-greatly interferes with his ability to acquire and sustain substantial gainful employment**" (R. at 631, emphasis added).  In a subsequent letter dated January 17, 2005, Dr. Parrish stated that plaintiff has had a loss of cognitive abilities and affective changes in personality functioning and mood disturbances, impairments in impulse control, and difficulty

11

controlling his anger (R. at 786).  **Dr. Parrish opined that
plaintiff had marked restrictions in activities of daily living,
marked difficulties in maintaining social functioning, and marked
difficulties in maintaining concentration, persistence and pace.**
He found plaintiff to be socially immature and adolescent-like or
child-like in terms of social-emotional maturity.  **Dr. Parish
noted that plaintiff has "difficulty finding employment" and when
he does find a job, which occurs infrequently, he either has
trouble keeping it or it was short-term or part-time to begin
with** (R. at 786, emphasis added).

On October 14, 2004, Dr. Parrish filled out a form
indicating that plaintiff is impaired by inadequate personality
functioning.  He noted that plaintiff is essentially a loner, is
socially awkward, has poor social judgment, and is somewhat
uncomfortable socially.  In regards to his ability to work, Dr.
Parrish stated:

> **I am skeptical about his being able to work
> either full time or even part-time on a
> continuing basis**.  His personality
> functioning and social behavior deficits are,
> I believe, his primary areas of dysfunction.

(R. at 691, emphasis added).  He also stated that plaintiff's
poor social skills and inadequate personality functioning are his
greatest impediments to his ability to work (R. at 691).

On November 11, 2005,  ARNP(advanced registered nurse
practitioner) Polly Rice-Maher, a treatment provider, indicated

12

that plaintiff has a "**severe and persistent mental illness, not controllable by medications or other treatment, causing severe functional limitations precluding competitive employment, and requiring ongoing psychiatric or psychological treatment**" (R. at 792, emphasis added).  ARNP Rice-Maher indicated that plaintiff had a personality change due to a traumatic brain injury, major depression, dysthmia, and a history of polydrug abuse.  She found that plaintiff has significant problems with concentration and memory.  She believed that plaintiff's problems are a long-term condition (R. at 793).  ARNP Rice-Maher stated that she prepared this report under the supervision of plaintiff's treating psychiatrist, Dr. Ken Williams (R. at 795).

In summary, the record contains the following opinions by various treating and examining medical sources who opine that plaintiff has severe mental impairments and is therefore unable to work:

    (1) Dr. Pauls, treating physician, March 2, 2003

    (2) Dr. Price, psychologist, consultative report, Sept. 16, 2003

    (3) Dr. Huet, April 20, 2004

    (4) Dr. Parrish, treating psychologist, (a) June 15, 2004, (b) Oct. 14, 2004, and (c) Jan. 17, 2005

    (5) ARNP Rice-Maher & Dr. Ken Williams, treating psychiatrist, Nov. 11, 2005

However, the ALJ only mentioned the report by Dr. Price, the

report by Dr. Parrish in June 2004, and the report by Dr. Huet
(R. at 29).  The ALJ did not mention or discuss the opinions
expressed by Dr. Pauls in March 2003, Dr. Parrish in Oct. 2004
and Jan. 2005, and ARNP Rice-Maher and Dr. Williams in Nov. 2005.
The ALJ therefore committed reversible error by ignoring numerous
medical opinions by treating medical sources.

    The ALJ rejected the opinions of Drs. Price and Parrish,
stating the following:

> In contrast to the assessments of Dr. Parrish
> and Dr. Price, however, were assessments
> completed by State agency physicians. In
> their review of the record, the claimant was
> assessed with mental limitations; however,
> they did not found [sic] the severity of
> limitation opined by the claimant's other
> doctors. Instead, the claimant was only
> assessed with some moderate mental
> limitations and his mental condition was not
> considered completely debilitating. It was
> also noted that the claimant had been able to
> work numerous jobs throughout the years
> despite having suffered a head trauma as a
> child. (Ex. B2F).

(R. at 29).  Exhibit B2F (R. at 604-608) is a mental RFC
assessment form filled out by a state agency physician who never
saw or examined the plaintiff.  It reports that plaintiff is
moderately limited in 4 out of 20 categories.[3]  The only

_____

[3]The report found plaintiff moderately limited in four
categories: (9) the ability to work in coordination with or
proximity to others without being distracted by them, (14) the
ability to accept instructions and respond appropriately to
criticism from supervisors, (16) the ability to maintain socially
appropriate behavior and to adhere to basic standards of neatness
and cleanliness, and (17) the ability to respond appropriately to

narrative discussion contained in this assessment, dated April 8, 2004, from Dr. Schloesser, is as follows:

> The C does have a varied work Hx.  The current psychiatric residual functioning capacities noted here indicate a good ability to understand, carry out and follow simple instructions, deal with routine changes and work on a sustained basis.

(R. at 608).  On September 23, 2004, Dr. Adams, a subsequent state agency consultant, (not cited to by the ALJ), briefly discussed some, but not all of the medical evidence set forth above, but noted that plaintiff has an average IQ and has engaged in substantial gainful activity since his head injury (R. at 707).[4]

The ALJ later discussed the medical evidence as follows:

> As noted above, various doctors have opined the claimant's mental condition is debilitating. These assessments, however, are not found persuasive. The medical record reflects the claimant has never been assessed with GAF scores below 50, indicating his symptomatology has only been assessed as moderate. Likewise, State agency physicians opined the claimant had only moderate limitations. The claimant's intellectual functioning has also been found in the normal range. More importantly, however, is that the

---

changes in the work setting (R. at 604-605).  The court would note that, without explanation, most of these limitations were not included by the ALJ in his RFC findings (R. at 31).

[4]Dr. Adams stated in her report that Dr. Parrish had not responded to a letter from her asking clarifying questions (R. at 707).  However, Dr. Parrish did respond on October 14, 2004 (R. at 691), as previously set forth in this report.  Thus, Dr. Parrish's clarifying comments were not considered by Dr. Adams.

15

> claimant has been able to work various jobs
> throughout his life despite his alleged
> debilitating mental problems. The claimant's
> ability to work these jobs shows a mental
> capacity much greater than being opined by
> the claimant or his doctors. It is also
> important to note the claimant has lived
> independently for periods and has shown the
> mental capacity to obtain a GED after
> dropping out of high school. These factors
> undermine the assertions made by the claimant
> and his doctors that his mental condition is
> debilitating and precludes him from working.
> Thus, the claimant's assertions of
> debilitating mental limitations are found
> exaggerated and the assessments of his
> treating doctors are not found persuasive.

(R. at 30).

As the court has previously noted, the ALJ has clearly erred
by ignoring the opinions of numerous medical sources who had
treated the plaintiff.  Furthermore, the courts have repeatedly
held that a state agency assessment using a check-the-box
evaluation form, unaccompanied by thorough written reports or
persuasive testimony is not substantial evidence.  <u>Fleetwood v.
Barnhart</u>, 211 Fed. Appx. 736, 740 (10th Cir. Jan. 4, 2007).
Exhibit B2F (R. at 604-608), cited to by the ALJ in his decision,
contained only a very brief, two sentence explanation of the RFC
opinions expressed in the assessment.  In light of the opinions
of Drs. Paul, Price, Huet, Parrish, and ARNP Rice-Maher and Dr.
Williams that plaintiff is disabled due to severe mental
impairments, and the failure of the state agency assessments to
consider all of these opinions by treating and/or examining

16

medical sources, the court finds that the state agency assessments in this case do not provide substantial evidence to discount the treating and/or examining medical source opinions.

Furthermore, to the extent that the state agency physicians (Drs. Schloesser and Adams) offer any opinion for discounting the numerous medical source opinions of disability, they both rely on plaintiff's work history (R. at 608) and that he has worked and engaged in substantial gainful activity since his head injury[5] (R. at 707).  The ALJ also clearly relied on plaintiff's work history to discount both the medical opinions and plaintiff's credibility (R. at 30).  However, the ALJ failed to fully discuss plaintiff's work history.

Defendant, in his brief, pointed out that plaintiff had earnings at the substantial gainful activity (SGA) level for 8 years (1979, 1981, 1986, 1987, 1989, 1995, 1997 and 2000)(Doc. 14 at 5).  Plaintiff turned 18 in 1973.  From 1974-2002, plaintiff only performed work at the SGA level for 8 out of 29 years (R. at 483).[6]  Thus, for 21 out of 29 years, he did not perform work at the SGA level.  Plaintiff's average income over the 29 year period was $4,237.47 (based on figures taken from R. at 483).

---

[5]Plaintiff, who was born in 1955, suffered his head injury at age 9 when he was kicked in the head by a horse (R. at 585).

[6]Earnings that ordinarily show SGA have increased from 1974-2002.  In 1974, annual earnings of $2,400 was considered SGA.  In December 2000, annual earnings of $8,400 was considered SGA.  20 C.F.R. § 404.1574(b)(2)(table 1).

This limited work history is supported by the various medical sources cited above.  Dr. Pauls stated that plaintiff has not been able to obtain any type of steady employment due to his mental difficulties (R. at 381).  Dr. Mintz stated that plaintiff functioned marginally in work settings generally doing part time work (R. at 743).  Dr. Price stated that plaintiff has been unable to sustain employment for prolonged periods of time without close supervision in something like a structured supported employment setting (R. at 592).  Dr. Parrish indicated that plaintiff has difficulty finding employment and that when he does find a job he either has trouble keeping it or it was short-term or part-time to begin with (R. at 786).  The findings of each of these medical sources is entirely consistent with the fact that plaintiff has been not engaged in substantial gainful activity for 21 out of 29 years.

Also not mentioned by the ALJ are two work activities questionnaires filled out by prior supervisors.  The first one was for a job plaintiff held from August 8, 2001 through Sept. 24, 2001.  In that job, the employer stated that plaintiff was a flagman on a low traveled road.  The supervisor indicated he was not sure plaintiff could have handled a busy highway (R. at 194).  The supervisor indicated that plaintiff sometimes had problems performing his duties in a timely and satisfactory manner, and he had to keep reminding plaintiff of what his duties were.  He gave

plaintiff special consideration by giving him easier duties due to his impairment or disability.  He considered him for work with the water truck, but felt he could not handle the job (R. at 195).  Employment ended because the work was no longer needed. He had no opinion on whether plaintiff could work full time because he had not been employed long enough for a good evaluation, but the supervisor indicated he would rehire the plaintiff (R. at 196).

The second questionnaire was filled out by a supervisor for a job plaintiff worked at from August 31, 2000 through Jan. 23, 2001.  The supervisor noted that plaintiff was slow (R. at 197). He noted that they had to explain things to plaintiff several times, that he had a short attention span, and that he had problems performing his duties in a timely and satisfactory manner.  He stated that plaintiff did not have the mental capacity for any work other than stacking lumber.  He noted that plaintiff had trouble with coming to work late because he overslept (R. at 198).  Plaintiff was terminated for being late to work, and this supervisor would not rehire the plaintiff (R. at 199).

These two questionnaires clearly raise serious questions concerning plaintiff's ability to maintain employment, and are entirely consistent with the opinions of the medical sources and the fact that plaintiff has not engaged in substantial gainful

activity for 21 out of 29 years.  Given the overwhelming weight
of the evidence, the court finds that the ALJ's reliance on
plaintiff's work history to discount the medical source opinions
and plaintiff's credibility is clearly erroneous.

The ALJ also found that plaintiff's assertions of
debilitating mental limitations are exaggerated (R. at 30).
However, the ALJ failed to mention that Dr. Price performed
symptom validity testing in order to determine if plaintiff was
exaggerating his symptomology, and found no indications of
exaggeration based on the testing (R. at 591).

The court finds that the evidence in this case clearly and
overwhelmingly indicates that plaintiff is unable to perform
substantial gainful activity.  In this case, there are seven
reports by six treating or examining medical sources who have
opined that plaintiff is disabled; most of these sources are
treatment providers.  This includes a consultative examination by
Dr. Price employing 15 different tests and procedures.  The court
finds that overwhelming evidence exists in the record that
plaintiff is unable to engage in substantial gainful activity.

However, what is not clear from the record is the extent to
which plaintiff's alcohol and/or drug use contributes to his
disability.  Dr. Pauls noted that plaintiff's limitations have
been complicated by intermittent problems with alcohol and drug
use and abuse (R. at 381).  Dr. Price diagnosed alcohol abuse-

20

intermittent (R. at 593), Dr. Mintz diagnosed alcohol abuse
continuing (R. at 743, 748), Dr. Huet diagnosed a history of
alcohol abuse in remission (R. at 637), and ARNP Rice-Maher and
Dr. Williams included in the list of plaintiff's limitations a
history of "polydrug" abuse (R. at 793).

In 1996, Congress passed Public Law 104-121.  It added the
following language to 42 U.S.C. § 423(d)(2):

> (C) An individual shall not be considered to
> be disabled for purposes of this title if
> alcoholism or drug addiction would (but for
> this subparagraph) be a contributing factor
> material to the Commissioner's determination
> that the individual is disabled.

20 C.F.R. § 404.1535 provides further guidance on this issue.  It
states as follows:

> (a) *General.*  If we find that you are
> disabled and have medical evidence of your
> drug addiction or alcoholism, we must
> determine whether your drug addiction or
> alcoholism is a contributing factor material
> to the determination of disability.
>
> (b) *Process we will follow when we have
> medical evidence of your drug addiction or
> alcoholism.* (1)The key factor we will
> examine in determining whether drug addiction
> or alcoholism is a contributing factor
> material to the determination of disability
> is whether we would still find you disabled
> if you stopped using alcohol or drugs.
>
>  (2) In making this determination, we will
> evaluate which of your current physical and
> mental limitations, upon which we based our
> current disability determination, would
> remain if you stopped using drugs or alcohol
> and then determine whether any or all of your
> remaining limitations would be disabling.

21

     (I) If we determine that your remaining
limitations would not be disabling, we will
find that your drug addiction or alcoholism
is a contributing factor material to the
determination of disability.

     (ii) If we determine that your remaining
limitations are disabling, you are disabled
independent of your drug addiction or
alcoholism and we will find that your drug
addiction or alcoholism is not a contributing
factor material to the determination of
disability.

The implementing regulations make clear that a finding of
disability is a condition precedent to an application of
§423(d)(2)(C).  The Commissioner must first make a determination
that the claimant is disabled.  He must then make a determination
whether the claimant would still be found disabled if he or she
stopped abusing alcohol or drugs.  If so, then the alcohol or
drug use is not a contributing factor material to the finding of
disability.  If however, the claimant's remaining impairments
would not be disabling without the alcohol or drug abuse, then
the alcohol or drug abuse is a contributing factor material to
the finding of disability.  The ALJ cannot begin to apply
§423(d)(2)(C) properly when he has not yet made a finding of
disability.  Drapeau v. Massanari, 255 F.3d 1211, 1214-1215 (10th
Cir. 2001).  The claimant has the burden of proving that his
alcoholism or drug addiction is not a contributing factor
material to his disability determination.  Ball v. Massanari, 254
F.3d 817, 821 (9th Cir. 2001); Doughty v. Apfel, 245 F.3d 1274,

22

1279-1280 (11th Cir. 2001); <u>Mittlestedt v. Apfel</u>, 204 F.3d 847,
852 (8th Cir. 2000); <u>Brown v. Apfel</u>, 192 F.3d 492, 498 (5th Cir.
1999).

In light of this legislation, and the evidence contained in
the record, the court shall remand the case directing the
defendant to make an initial determination that plaintiff is
disabled.  Furthermore, plaintiff shall clarify for the record
the onset date of disability he is alleging, and the ALJ shall
make a finding concerning the onset date of disability.  Finally,
the defendant shall make a determination of whether plaintiff's
use of alcohol and/or drugs is a contributing factor material to
the determination of disability.

IT IS THEREFORE RECOMMENDED that the decision of the
Commissioner be reversed, and that the case be remanded for
further proceedings (sentence four remand) for the reasons set
forth above.

Copies of this recommendation and report shall be provided
to counsel of record for the parties.  Pursuant to 28 U.S.C. §
636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule
72.1.4, the parties may serve and file written objections to the
recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on August 8, 2007.

s/John Thomas Reid
JOHN THOMAS REID
United States Magistrate Judge

23